# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 96-2357

_____

In re: Broadview Lumber Co., Inc.,                                *

        *

      Debtor,        *

------------------------------------------     *

        *

Thomas J. O'Neal, Trustee,  *

        *

    Plaintiff-Appellant,   *

        * Appeal from the United States

     v.          * District Court for the

        * Western District of Missouri.

Southwest Missouri Bank of  *

Carthage; Mercantile Bank of  *

Joplin; Richard Mansfield;  *

Jenny Mansfield,     *

        *

    Defendants-Appellees.  *

_____

Submitted:  March 10, 1997

Filed:   July 8, 1997

_____

Before McMILLIAN and HANSEN, Circuit Judges, and MAGNUSON,[1] District Judge.

_____

[1] The HONORABLE PAUL A. MAGNUSON, Chief Judge, United States District Court for the District of Minnesota, sitting by designation.

HANSEN, Circuit Judge.

Thomas J. O'Neal (Trustee), as Chapter 7 trustee for the bankruptcy estate of Broadview Lumber Company, Inc. (Broadview), appeals the district court's[2] decision affirming certain rulings of the bankruptcy court[3] in favor of Southwest Missouri Bank of Carthage, Missouri (SMB) and Mercantile Bank of Joplin (Mercantile), in the Trustee's adversary proceeding based on transactions undertaken by Broadview's former president, Richard Mansfield (Mansfield).[4]   At issue in this appeal is whether the district court erred in affirming the bankruptcy court's ruling in favor of Mercantile on the Trustee's claims for conversion and postpetition transfer, and whether the district court erred in affirming the bankruptcy court's findings in favor of SMB and Mercantile on the Trustee's claims for an equitable lien or constructive trust.  We affirm.

I.

This case involves a complicated series of transactions undertaken by Mansfield to transfer Broadview's corporate assets to his personal accounts; only one of these transactions is involved here.  The

---

[2]The Honorable Joseph E. Stevens, Jr., United States District Judge for the Western District of Missouri.

[3]The Honorable Arthur B. Federman, United States Bankruptcy Judge for the Western District of Missouri.

[4]While Richard Mansfield and his wife Jenny are appellees in this case, their failure to file briefs on appeal waived any arguments on their behalf.

facts as relevant to this appeal are as follows. Broadview--a wholesale lumber brokerage firm --was established in 1905.  In 1990, Mansfield enjoyed a position as president and  fifty-percent stockholder. Broadview's

corporate checking account was maintained at SMB, and its financing was provided by Fidelcorp, which advanced funds against Broadview's accounts receivable. Fidelcorp was acquired by CIT Group (CIT) sometime before January 1, 1991; CIT refused to advance further funds beginning January 2, 1991, and Broadview was left without funds to support over $400,000 in checks previously written. As a result, Broadview was forced to cease operations almost immediately.

Between January and May 1991, Mansfield liquidated inventory and collected accounts receivable sufficient to pay money due to CIT. Mansfield overpaid the debt to CIT by $17,303.37, and that amount was refunded to Broadview by check. An involuntary bankruptcy petition was filed against Broadview on November 12, 1991. On November 25, 1991, Mansfield purchased a cashier's check from SMB in the amount of $19,303.37 payable to "Broadview Lumber," with the $17,303.37 check from CIT and $2,000 drawn on Broadview's account at SMB.

Mansfield and his wife maintained a personal account at Mercantile. On January 21, 1992, Mansfield endorsed the $19,202.27 cashier's check "Broadview Lumber Co., Inc., Richard Mansfield, President," and presented the check to Mercantile for deposit in this personal account; the accompanying deposit slip described the account as "Richard T. or Jenny P. Mansfield Construction Account." Funds from that account--which included other corporate funds transferred into it by Mansfield--were used for construction of the Mansfields' home in Carthage, Missouri. Mercantile, who had previously agreed to loan the Mansfields $180,000 for the construction, extended

-4-

permanent financing for the repayment of the loan in April 1992. Mercantile holds a deed of trust to the Mansfields' property securing the repayment of the loan.

The Trustee filed this adversary proceeding against SMB, Mercantile, and the Mansfields under 28 U.S.C. § 157(b)(2)(E) and (F) to recover funds inappropriately transferred out of Broadview's account. The Trustee asserted, inter alia, that Mercantile had knowledge that Mansfield acted in breach of his fiduciary duty,

violating Missouri's Uniform Fiduciaries Law (UFL), and that Mercantile took the $19,303.37 check subject to all claims that might exist and not as a holder in due course under the Uniform Commercial Code (UCC). The Trustee alleged Mercantile became liable in conversion by crediting the check's proceeds to the Mansfields' personal account. The Trustee sought judgment against Mercantile in the amount of $19,303.37 and a constructive trust or equitable lien upon the Mansfields' Carthage property for funds converted by Mansfield and used for construction of the Mansfields' home. The Trustee raised a number of allegations against SMB as well.[5]

Following a one-day trial, the bankruptcy court entered a money judgment against the Mansfields. The bankruptcy court found in Mercantile's favor on the conversion claims against it, concluding that Mercantile did not have actual knowledge that Mansfield breached his fiduciary duty or that it knew of such facts that the failure to inquire constituted bad faith. The bankruptcy court noted that even though the teller was negligent in allowing the deposit and Mercantile's vice president knew Broadview had closed its doors, these facts did not "add up to knowledge" that Mansfield was breaching his fiduciary duty; nor were the facts sufficient to put Mercantile on notice that such a breach might be taking place. (Appellant's Adden. at 26.) Because the Trustee did not meet his burden of establishing that Mercantile had actual knowledge or acted in bad faith, the bankruptcy court concluded the Trustee could not recover against Mercantile for conversion.

As to the request for a constructive trust or an equitable lien, the bankruptcy court noted that such remedies are available only when there is no adequate remedy at

---

[5]SMB filed the original notice of appeal in this court; the Trustee filed a notice of appeal as well. SMB and the Trustee thereafter reached a compromise settlement of the claims raised in SMB's appeal. The settlement was approved by the bankruptcy court and we granted SMB's motion to dismiss its appeal. SMB has notified this court that it intends no further action on appeal but has adopted those portions of Mercantile's brief which address issues of constructive trust and equitable lien.

law.  In this case, because the bankruptcy court granted the Trustee judgment against the Mansfields (which exceeded the amount of Broadview's property that the Trustee had shown was used for the Mansfields' home), the bankruptcy court concluded the Trustee's remedy at law was adequate.  Further, the Trustee failed to establish that the Mansfields were insolvent.  The district court affirmed the bankruptcy court's decision for the reasons expressed by the bankruptcy court.

The Trustee timely appeals, asserting that because Mercantile stipulated that it had notice of Mansfield's fiduciary status, and because Mansfield--identified by his endorsement as the president of Broadview--deposited the corporation's check in his personal account, Mercantile did not become a holder in due course.  The Trustee further argues that Mercantile acted in bad faith contrary to the UFL (Mo. Ann. Stat. § 456.310 (West 1992)), and that even though he need not show an inadequate remedy at law for equitable relief, such remedy is inadequate.

Mercantile, on the other hand, asserts that the teller was unable to determine whether the instrument payable to "Broadview Lumber" was payable to a corporation; that the Trustee failed to establish that the teller had actual knowledge of Mansfield's breach of fiduciary duty; and that the Trustee's remedy is adequate, thus barring equitable relief.

                                    II.

This court reviews the bankruptcy court's factual findings for clear error and its legal conclusions de novo.  See First Nat'l Bank of Olathe v. Pontow, 111 F.3d 604, 609 (8th Cir. 1997).  State law controls issues concerning the nature and extent of a debtor's interest in property.  See Natkin & Co. v. Myers (In re Rine & Rine Auctioneers, Inc.), 74 F.3d 848, 851 (8th Cir. 1996).  As all the events herein occurred in the state of Missouri, we apply Missouri law and review de novo the lower court's determinations of state law.  See Nangle v. Lauer (In re Lauer) , 98 F.3d 378, 382 (8th

Cir. 1996) (citing <u>Salve Regina College v. Russell</u>, 499 U.S.  225, 231 (1991)).

### III.

#### A.   Uniform Fiduciaries Law

The applicable UFL provision states in relevant part:

> If a fiduciary makes a deposit in a bank to his personal credit of checks . . . payable to his principal and endorsed by him, if he is empowered to endorse such checks, or if he otherwise makes a deposit of funds held by him as fiduciary, the bank receiving such deposit is not bound to inquire whether the fiduciary is committing thereby a breach of his obligation as fiduciary; and the bank is authorized to pay the amount of the deposit or any part thereof upon the personal check of the fiduciary without being liable to the principal, unless the bank receives the deposit or pays the check with actual knowledge that the fiduciary is committing a breach of his obligation as fiduciary in making such deposit or in drawing such check, or with knowledge of such facts that its action in receiving the deposit or paying the check amounts to bad faith.

Mo. Ann. Stat. § 456.310 (West  1992).  The UFL relieves banks like Mercantile from the common law duty of inquiring into the propriety of such transactions conducted by fiduciaries.  See <u>Lauer</u>, 98 F.3d at 383.  To establish a claim under the UFL, the Trustee must establish that Mansfield was a fiduciary, that Mansfield breached his fiduciary duty, and that Mercantile had either actual knowledge of the breach or sufficient facts such that its conduct amounted to bad faith.  See <u>id.</u> at 386.

Actual knowledge for purposes of the UFL requires a present awareness that a fiduciary is breaching his duty for personal gain.  See <u>Trenton Trust Co. v. Western Sur. Co.</u>, 599 S.W.2d 481, 491 (Mo. 1980) (en banc); <u>Southern Agency Co. v. Hampton Bank of St. Louis</u>, 452 S.W.2d 100, 105 (Mo. 1970).  "Bad faith" requires

something more than mere negligence and can be found where the person accepting a negotiable instrument disregards circumstances that are suggestive of a breach and are sufficiently obvious such that it is in bad faith to remain passive. See Trenton Trust Co., 599 S.W.2d at 492; General Ins. Co. v. Commerce Bank of St. Charles, 505 S.W.2d 454, 458 (Mo. Ct. App. 1974) ("The facts and circumstances must be so cogent and obvious that to remain passive would amount to a deliberate desire to evade knowledge because of a belief or fear that inquiry would disclose a defect in the transaction."). Absent proof of these factors, the bank is allowed to presume that the fiduciary is acting within his capacity as a fiduciary.

The bankruptcy court concluded, and we agree, that the Trustee failed to establish that Mercantile acted with "actual knowledge" or in bad faith, as no evidence was produced to establish the teller had any knowledge that Mansfield was breaching his fiduciary duty. Compare Trenton Trust, 599 S.W.2d at 484-86 (guardian allowed to use insurance checks made payable to her as guardian for her children to purchase certificates of deposit which did not reflect fiduciary relationship; bank officer who allowed her to cash checks was on first name basis with fiduciary, had been told about her fiduciary status, and had supervised fiduciary's endorsement of checks to match payee, even looking specifically to see if the payee and endorsements matched; bank was liable under UFL, as officer had actual knowledge of the fiduciary's breach), with Southern Agency, 452 S.W.2d at 102-04 (corporate president deposited checks payable to corporation into account of different corporation in which he was the principal shareholder; president then used funds to purchase cashier's checks; bank did not act with actual knowledge or bad faith, as there was no evidence or testimony to show any of bank's employees actually knew president was breaching his fiduciary obligations).[6]

---

[6]While the Trustee points out that Mansfield did not have the authority to endorse the check in his personal capacity, we note that "[i]t is not necessary, under the Uniform Fiduciaries Act, that the fiduciary have express authority to indorse only for a particular purpose. If he has the power to indorse for any purpose, and if the limitations on that power have not been communicated to the indorsee bank, then actual notice of misappropriation or conduct amounting to bad faith on the part of the bank must be shown in order for the principal to recover." See Southern Agency Co., 452 S.W.2d at 105.

## B.  Holder in Due Course

Likewise, we conclude Mercantile took the check as a holder in due course without knowledge of Mansfield's fiduciary status and breach of fiduciary duty.  Under Missouri law in effect at the time of the transaction--a "purchaser [of a negotiable instrument] has notice of a claim against the instrument when he has knowledge that a fiduciary has negotiated the instrument in payment of or as security for his own debt or in any transaction for his own benefit or otherwise in breach of duty," Mo. Ann. Stat. § 400.3-304(2) (West 1965).  A purchaser who takes with such knowledge does not take as a holder in due course.  See Mo. Ann. Stat. § 400.3-302(1)(c) (West 1965).  Section 400.3-304(2) followed the policy of the Uniform Fiduciaries Act, and the UCC Comment following § 400.3-304 makes it clear that:

> mere notice of the existence of the fiduciary relation is not enough in itself to prevent the holder from taking in due course, and he is free to take the instrument on the assumption that the fiduciary is acting properly.  The purchaser may pay cash into the hands of the fiduciary without notice of any breach of the obligation.

Mo. Ann. Stat. § 400.3-304, UCC comment 5 (West 1965); McKee Constr. Co. v. Stanley Plumbing & Heating Co., 828 S.W.2d 700, 703 (Mo. Ct. App. 1992) (where code is adopted by state, accompanying comments "are given great weight"); Boatmen's Nat'l Bank of Carthage v. Eidson, 796 S.W.2d 920, 923 (Mo. Ct. App. 1990) (official UCC comments, while not having the force of statutory language, are nonetheless permissible and persuasive in determining legislative intent).

-10-

Testimony before the bankruptcy court reflects that while the Mansfields' loan officer at Mercantile knew of Mansfield's status as officer of Broadview and Broadview's impending bankruptcy, the teller who conducted the transaction was unaware of both these facts. The teller testified that she did not know Mansfield, and she was unable to identify him in the courtroom; she further testified that there was no way to tell whether the check was payable to a corporation, and that she assumed the check may have been payable to a "d/b/a type of account." These facts are insufficient to demonstrate actual knowledge that Mansfield was depositing corporate funds for his personal benefit and are thus insufficient to put Mercantile on notice of the Trustee's claim to the funds.

To the extent the Trustee relies on what he believes to be the current UCC provision, such reliance is misplaced. The Trustee sets forth in his brief the UCC provision enacted in Missouri in 1992--after the transaction at issue here[7]--which stated that a taker has notice of a breach of fiduciary duty where an instrument payable to a represented person (which includes a corporation) is "deposited to an account other than an account of the fiduciary, as such, or an account of the represented person." See Mo. Ann. Stat. § 400.3-307(a) & (b)(2)(iii) (West 1994). The Missouri Legislature amended that provision in 1994, however, to delete the language on which the Trustee relies. See Mo. Ann. Stat. § 400.3-307(b)(2) (West 1994 & Supp. 1997).[8] We also

---

[7]The transaction in this case occurred in January 1992, and the new UCC provision was not approved until July 8, 1992.

[8]Section 400.3-307(b)(2) (West 1994 & Supp. 1997) states:

In the case of an instrument payable to the represented person or the fiduciary as such, the taker has notice of the breach of fiduciary duty if the instrument is (i) taken in payment of or as security for a debt known by the taker to be the personal debt of the fiduciary, or (ii) taken in a transaction known by the taker to be for the personal benefit of the fiduciary.

-11-

note that both the current and superseded versions of section 400.3-307 apply only when the bank has "knowledge" of the presenter's fiduciary status; "knowledge of the [bank] is determined by the knowledge of the 'individual conducting that transaction,' i.e., the clerk who receives and processes the instrument." Mo. Ann. Stat. § 400.3-307, UCC comment 2 (West 1994). "Notice which does not amount to knowledge is not enough to cause section 3-307 to apply." Id. The bank clerk's mere notice of Mansfield's status as a corporate officer does not amount to "knowledge" that Mansfield owed "a fiduciary duty with respect to [the] instrument," Mo. Ann. Stat. § 400.3-307, within the meaning of Missouri's Uniform Commercial Code.

### C. Constructive Trust or Equitable Lien

"A constructive trust is a method by which a court exercises its equitable powers to remedy a situation where a party has been wrongfully deprived of some right, title, benefit or interest in property as a result of fraud or in violation of confidence or faith reposed in another." Fix v. Fix, 847 S.W.2d 762, 765 (Mo. 1993) (en banc) (internal quotations omitted). The purpose of a "constructive trust is to restore to the rightful owner the property wrongfully withheld by the defendant." Id. Under Missouri law, an equitable lien is applicable only where there is an inadequate remedy at law and "justice would suffer without the equitable remedy." Jorritsma v. Tymac Controls Corp., 864 F.2d 597, 599 (8th Cir. 1988). "Generally, equity will not intercede if there is an adequate remedy at law." Hammons v. Ehney, 924 S.W.2d 843, 847 (Mo. 1996) (en banc). See Newmark v. Vogelgesang, 915 S.W.2d 337, 339 (Mo. Ct. App. 1996) ("Equitable relief is discretionary, extraordinary, and should not be applied when an adequate legal remedy exists." (internal quotations omitted)).

As the Trustee was awarded a money judgment against the Mansfields, and there is no evidence that the Mansfields are insolvent, we conclude that the bankruptcy court correctly declined to impose a constructive trust or an equitable lien.

-12-

                                    IV.

Accordingly, we affirm the judgment of the district court.

A true copy.

        Attest:

                CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.