# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

—————————————

No. 00-6091 EM

—————————————

| | | |
|---|---|---|
| In re: Popkin & Stern, | * | |
| | * | |
| Debtor. | * | |
| —————————————————— | * | |
| | * | |
| Robert J. Blackwell, | * | |
| | * | Appeal from the United States |
| Plaintiff-Appellee, | * | Bankruptcy Court for the |
| | * | Eastern District of Missouri |
| v. | * | |
| | * | |
| Nancy Fendell Lurie, | * | |
| | * | |
| Defendant-Appellant. | * | |

—————————————

Submitted: February 6, 2001
Filed: March 19, 2001

—————————————

Before KOGER, Chief Judge, WILLIAM A. HILL, and SCOTT, Bankruptcy Judges.

—————————————

WILLIAM A. HILL, Bankruptcy Judge.

Defendant Nancy Fendell Lurie appeals from the bankruptcy court's conclusion that the Rooker-Feldman doctrine effectively bars the bankruptcy court from determining the nature and extent of her ownership interest in certain execution proceeds derived from a sheriff's sale of a painting entitled "Apache Renegades." We have jurisdiction over this appeal from the final order of the bankruptcy court. See 28 U.S.C. § 158(b). For the reasons set forth below, we reverse and remand this case for further proceedings consistent with this opinion.

BACKGROUND

In early 1992, an involuntary chapter 7 bankruptcy petition was filed against the Popkin & Stern law firm. The case was converted to chapter 11 and a trustee, Robert Blackwell ("trustee"), was appointed. A chapter 11 plan was eventually confirmed that provided for the creation of a "liquidating trust," and Blackwell was specified as the liquidating trustee.

Ronald Lurie ("Ronald") was a general managing partner of Popkin & Stern. On October 20, 1994, the liquidating trustee obtained a bankruptcy court judgment against Ronald in the amount of $1,121,743.00. This judgment is often referred to as the "Deficiency Judgment."

The defendant, Nancy Fendell Lurie ("Nancy"), is Ronald's wife. On April 15, 1998, the liquidating trustee obtained a bankruptcy court judgment against Nancy in the amount of $352,300.95 on the basis of several fraudulent transfers she had received from Ronald. In its subsequent order of December 21, 1999, the bankruptcy court clarified the relationship between the judgments against Ronald and Nancy, stating:

15. The total amount that the Liquidating Trustee may recover under Ron's Deficiency Judgment is $1,121,743.00 plus interest from the date that the Judgment was entered.

16. As provided under Paragraph 14 of the April 15, 1998 Judgment entered against Nancy Lurie in Adversary No. 94-4461, of the amount that [the] Liquidating Trustee can recover under Ron's Deficiency Judgment, the Liquidating Trustee can recover up to $352,300.95 plus interest under the Judgment entered against Nancy in Adversary No. 94-4461.

* * *

23. If any property owned by the Luries as tenants by the entireties is liquidated under a Writ of Execution, *the full amount of proceeds should be applied to both the Deficiency Judgment and the Judgment entered against Nancy Lurie.* [italics added]

While the trustee's fraudulent transfer action was pending against Nancy, the bankruptcy court entered an order freezing the sale of certain assets, including the painting entitled "Apache Renegades" which was being held by the Trailside Americana art gallery in Scottsdale, Arizona.

On November 18, 1998, the bankruptcy court granted the trustee's application for relief from the freeze order with respect to the "Apache Renegades" painting. The trustee domesticated the bankruptcy court judgments against Ronald and Nancy in the Maricopa County Superior Court for the State of Arizona. He then initiated state court garnishment proceedings for the purpose of executing on the painting, selling it at a sheriff's sale, and applying the proceeds against Ronald's Deficiency Judgment.

On June 30, 1999, the trustee obtained a garnishment judgment which identified Ronald as the Judgment Debtor and contained the following finding as to ownership of the painting at issue: "[t]he property held by Garnishee is non-exempt personal property of the Judgment Debtor and is subject to garnishment and execution." On October 4, 1999, the trustee obtained a similar garnishment judgment against Nancy which contained a finding identical to the one set forth above except that it named Nancy as the owner of the painting. Both garnishment judgments ordered the Clerk of Court for the Maricopa County Superior Court to issue Writs of Special Execution directing the sheriff to seize and sell the painting at issue. However, the garnishment judgments were silent as to how the proceeds of that sale were to be allocated between the bankruptcy court judgments against Ronald and Nancy.

On October 21, 1999, the Clerk of Court for the Maricopa County Superior Court issued a Writ of Special Execution based on the June 30, 1999, garnishment judgment referencing Ronald's Deficiency Judgment. The writ was drafted by the trustee's attorneys and signed by the Clerk of Court. It directed the sheriff to seize the "Apache Renegades" painting, sell it, and apply the proceeds to reduce the outstanding balance of Ronald's Deficiency Judgment. However, the writ was silent as to whether any of the proceeds should also be applied in partial satisfaction of the fraudulent transfer judgment against Nancy. The record before us does not reflect whether the Clerk of Court issued a similar Writ of Special Execution based on the October 4, 1999, garnishment judgment.

After the Maricopa County sheriff levied on the painting in early November 1999, Nancy received a Sheriff's Notice of Sale of Personal Property on Execution ("Notice of Sale") which stated that the painting would be sold at a sheriff's sale on December 2, 1999, in partial satisfaction of the Deficiency Judgment against Ronald. The Notice of Sale was silent as to whether any of the proceeds would be applied to the fraudulent transfer judgment against Nancy. Nancy responded by moving the bankruptcy court for a stay of execution, specifically claiming an ownership interest in the painting at issue. Nancy's motion for a stay of execution was denied, and the painting was sold at a sheriff's sale on January 13, 2000. The sheriff's Return of Sale of Personal Property Under Execution ("Return of Sale") suggested that the

execution proceeds would be applied in partial satisfaction of Ronald's Deficiency Judgment. The Return of Sale was silent as to whether any portion of the execution proceeds might also be applied to the judgment against Nancy.

On March 10, 2000, the trustee moved the bankruptcy court for a determination as to the various ownership interests in the execution proceeds of the "Apache Renegades" painting. Subsequently, the trustee moved the bankruptcy court for an order allowing him to distribute 12.6 percent ($25,585.00) of the execution proceeds to Ronald's brother, Robert Lurie, on the basis of Robert's claimed ownership interest in the painting. By order dated April 12, 2000, the bankruptcy court granted the trustee's motion for partial distribution.

A hearing regarding the trustee's March 10, 2000, motion to determine ownership of the remaining execution proceeds was held on April 26, 2000. On May 5, 2000, the bankruptcy court issued an order determining that neither Ronald nor Nancy had an ownership interest in the execution proceeds. The trustee then filed a motion for reconsideration which was granted on May 23, 2000. The bankruptcy court vacated its order of May 5, 2000, and granted the trustee leave to file a new motion to determine ownership of the execution proceeds. On June 12, 2000, however, the trustee withdrew his prior motion for such a determination.

On June 21, 2000, the trustee filed a Partial Satisfaction of Judgment with the Maricopa County Superior Court. The Partial Satisfaction of Judgment was prepared by the trustee's attorneys and acknowledged that according to the garnishee-defendant, Trailside Americana art gallery, Nancy had an ownership interest in the painting that was sold. Nevertheless, the Partial Satisfaction of Judgment advised the Arizona court that none of the execution proceeds had been applied to reduce the outstanding balance of the fraudulent transfer judgment against Nancy. Specifically, the Partial Satisfaction of Judgment stated that "[o]ne hundred percent (100%) of the net proceeds of the sale of the asset in Maricopa County were consumed in partially satisfying [the Deficiency Judgment against Ronald] and, therefore, no excess proceeds were available to be applied to [the fraudulent transfer judgment against Nancy]."

On June 27, 2000, Nancy filed her own motion with the bankruptcy court to determine ownership of the execution proceeds. A hearing was conducted on July 14, 2000, and the bankruptcy court issued an order dated July 26, 2000, detailing its ruling. The bankruptcy court found that the sheriff had sold the painting under Ronald's Deficiency Judgment and that he had applied the proceeds of the sale to that

4

judgment. The bankruptcy court then concluded that the Rooker-Feldman doctrine precluded Nancy from "trying to relitigate the Arizona Superior Court Judgment and/or the issue of the application of the [execution] proceeds." Alternatively, the bankruptcy court concluded that full faith and credit, collateral estoppel, or judicial estoppel precluded Nancy from litigating in bankruptcy court the issue of whether any execution proceeds should be applied in partial satisfaction of the fraudulent transfer judgment against her.

On August 7, 2000, Nancy filed a motion to set aside the bankruptcy court's order of July 26, 2000, arguing that the Rooker-Feldman doctrine had no bearing on the issue of whether the execution proceeds should be applied to partially satisfy the fraudulent transfer judgment against her. By order dated August 8, 2000, the bankruptcy court denied Nancy's motion. Nancy appeals from that denial, asserting that the bankruptcy court erred in concluding that the Rooker-Feldman doctrine prohibited the application of execution proceeds against her fraudulent transfer judgment. She further contends that she is entitled to equitable relief pursuant to 11 U.S.C. § 105(a). The liquidating trustee argues that the bankruptcy court properly applied the Rooker-Feldman doctrine, that the bankruptcy court's decision should be affirmed, and that Nancy is not entitled to any equitable relief under section 105(a) of the Bankruptcy Code.

## STANDARD OF REVIEW

On appeal, we review the bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*. Fed. R. Bankr. P. 8013; Hatcher v. U. S. Trustee (In re Hatcher), 218 B.R. 441, 445 (B.A.P. 8th Cir. 1998) (citations omitted); Gourley v. Usery (In re Usery), 123 F.3d 1089, 1093 (8th Cir. 1997); O'Neal v. Southwest Mo. Bank (In re Broadview Lumber Co.), 118 F.3d 1246, 1250 (8th Cir. 1997).

## DISCUSSION

The liquidating trustee argues that the Rooker-Feldman doctrine precludes the bankruptcy court from entertaining Nancy's motion for a determination as to whether the execution proceeds should be applied in partial satisfaction of her fraudulent transfer judgment. In Ferren v. Searcy Winnelson Co. (In re Ferren), 227 B.R. 279 (B.A.P. 8th Cir. 1998), we summarized the tenets of the Rooker-Feldman doctrine as follows:

> Initially, we note that preclusion, upon which the bankruptcy court relied, and the Rooker-Feldman doctrine "are closely related legal concepts." Goetzman v. Agribank, FCB (In re Goetzman), 91 F.3d 1173, 1177 (8th Cir.), cert. denied, 519 U.S. 1042, 117

5

S.Ct. 612, 136 L.Ed.2d 537 (1996); see Charchenko v. City of Stillwater, 47 F.3d 981, 983 n. 1 (8th Cir. 1995). The Rooker-Feldman doctrine "derives from the prohibition on federal appellate review of state court proceedings." Bechtold v. City of Rosemount, 104 F.3d 1062, 1065 (8th Cir. 1997); see Hatcher v. U.S. Trustee (In re Hatcher), 218 B.R. 441, 447 (8th Cir. BAP 1998) (quoting same). Under the doctrine, lower federal courts lack subject matter jurisdiction over challenges to determinations made by state courts in judicial proceedings. See Snider v. City of Excelsior Springs, 154 F.3d 809, 811 (8th Cir. 1998); Neal v. Wilson, 112 F.3d 351, 356 (8th Cir. 1997). Instead, review of state court decisions lies exclusively in the United States Supreme Court. See First Commercial Trust Co. v. Colt's Mfg. Co., 77 F.3d 1081, 1083 (8th Cir. 1996); Postma v. First Fed. Sav. & Loan, 74 F.3d 160, 162 (8th Cir. 1996).

Impermissible appellate review occurs in the lower federal courts whenever they entertain claims which are inextricably intertwined with those addressed in the state court. Snider, 154 F.3d at 811; In re Goetzman, 91 F.3d at 1177. Claims are inextricably intertwined "if the relief requested in the federal action would effectively reverse the state court decision or void its ruling." Bechtold, 104 F.3d at 1065; Charchenko, 47 F.3d at 983. Thus, in other words, the Rooker-Feldman doctrine precludes a federal action "if the federal challenge succeeds only to the extent that the state court wrongly decided the issues before it." Keene Corp. v. Cass, 908 F.2d 293, 296 (8th Cir. 1990) (quoting Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 25, 107 S.Ct. 1519, 1533, 95 L.Ed.2d 1 (1987) (Marshall, J., concurring)); Postma, 74 F.3d at 162 (quoting same).

Ferren, 227 B.R. at 282-83 (footnotes omitted); see also Hatcher v. U.S. Trustee (In re Hatcher), 218 B.R. 441, 447-48 (B.A.P. 8th Cir. 1998). As in Ferren, we must determine what the state court held and whether the relief Nancy sought in bankruptcy court would have voided the state court's decision or required a determination that the state court had erred. Ferren, 227 B.R. at 283 (citing Snider v. City of Excelsior Springs, 154 F.3d 809, 811 (8th Cir. 1998)).

We begin by analyzing the relevant holdings of the state court judgments at issue. In this case, the trustee obtained two garnishment judgments from the Maricopa County Superior Court for the State of Arizona. One judgment contained a finding that Ronald owned the "Apache Renegades" painting. The other judgment contained an identical finding that Nancy owned the aforementioned painting. These findings suggest that both Ronald and Nancy had ownership interests in the painting. Moreover, the garnishment judgments at issue are silent as to how the execution proceeds from the sale of the subject painting were to be applied in satisfaction of the respective bankruptcy court judgments against Ronald and Nancy.

We must next determine whether the relief Nancy sought in bankruptcy court would have voided a state court decision or would have required a determination that the state court had erred. In her motions of June 27, 2000, and August 7, 2000, Nancy sought to have the execution proceeds from the "Apache Renegades" painting applied in partial satisfaction of the fraudulent transfer judgment against her. The relief Nancy requested was consistent with the October 4, 1999, state court garnishment judgment which specifically stated that she had an ownership interest in the painting at issue. Given that neither of the state court garnishment judgments indicated how the execution proceeds were to be apportioned between the respective bankruptcy court judgments against Ronald and Nancy, we fail to see how the relief Nancy requested would have voided the state court garnishment judgments or required a determination that the state court had erred.

Given the inter-related nature of the bankruptcy court judgments against Ronald and Nancy, application of the execution proceeds against Ronald's Deficiency Judgment did not foreclose the possibility that all or a portion of those same proceeds should have been applied to the fraudulent transfer judgment against Nancy as well. This possibility was expressly contemplated by the bankruptcy court's order of December 21, 1999, and the trustee had knowledge of this order well before the painting was sold and well before he filed the June 21, 2000, Partial Satisfaction of Judgment with the Arizona state court. Although the June 21, 2000, Partial Satisfaction of Judgment indicates that none of the proceeds would be applied to the fraudulent transfer judgment against Nancy, that document was prepared solely by the trustee and his attorneys. Therefore, it does not represent a judicial determination and reflects only the conclusion of the trustee. As there has been no judicial determination by the Arizona state court prohibiting application of the execution proceeds to the fraudulent transfer judgment against Nancy, we conclude that the relief Nancy requested from the bankruptcy court was not inextricably intertwined with any decision of the Arizona state court. Accordingly, the bankruptcy court erred in ruling that the Rooker-Feldman doctrine barred it from determining the extent to which the execution proceeds at issue should be applied to Nancy's fraudulent transfer judgment.

Although the trustee has briefly argued that the bankruptcy court's decision might also be upheld on the basis of collateral estoppel, judicial estoppel, and 28 U.S.C. § 1738 (the Full Faith and Credit statute), our examination of the record leads us to conclude that these arguments have no merit. The Arizona state court has never passed on the issue of whether the execution proceeds should be applied to Nancy's fraudulent transfer judgment. Therefore, 28 U.S.C. § 1738 and collateral estoppel are inapplicable. See generally Fischer v. Scarborough (In re Scarborough), 171 F.3d 638, 641 (8th Cir.

1999); <u>Lommen v. City of East Grand Forks</u>, 97 F.3d 272, 274 (8th Cir. 1996). Similarly, judicial estoppel is inapplicable because both Nancy and the trustee have consistently maintained that Nancy had an ownership interest in the painting and its proceeds. <u>See</u> <u>Hossaini v. Western Missouri Medical Center</u>, 140 F.3d 1140, 1142-43 (8th Cir. 1998).

## CONCLUSION

Having determined that the Rooker-Feldman doctrine does not bar the bankruptcy court from determining the extent to which the execution proceeds from the "Apache Renegades" painting should be applied to Nancy's fraudulent transfer judgment, we need not address Nancy's contention that she is entitled to equitable relief under 11 U.S.C. § 105(a). We reverse and remand this case for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE PANEL,
EIGHTH CIRCUIT.