492 P.2d 1208

Varsted JIZMEJIAN, Appellant,

v.

Rose Anna JIZMEJIAN, Appellee.

No. 2 CA–CIV 1057.

Court of Appeals of Arizona,
Division 2.

Jan. 27, 1972.

HOWARD, Judge.

This is an appeal from a divorce decree and order denying a motion for new trial. Appellant asserts that the trial court erred in granting a divorce to the appellee since she proved no grounds and further contends that the court erred in granting her alimony in the sum of $300 per month, in finding that certain property was community property, and in awarding appellee $6,000 as her share of said property. The facts shall be discussed as they pertain to the specific questions presented to this court for review.

## GROUNDS FOR DIVORCE

The parties were married November 8, 1947, in Waukegan, Illinois. In 1951, appellant was recalled into the Air Force because of the Korean conflict and in 1964, the parties came to the State of Arizona as a result of the appellant being assigned to duty in this state by the United States Air Force. Although it was not until the spring of 1967, that the appellant moved out of the house in which he and appellee were living and returned to the State of Illinois, appellee testified that the last time the parties had sexual relations was in the year 1957, and that since that time she attempted to have sexual relations with him but he refused. Furthermore, she testified that not only did he refuse to have sexual relations but that he had not even kissed her since the year 1957. The situation deteriorated to such an extent that in 1967, appellee secured a decree of separation from bed and board against the appellant in the Pima County Superior Court. Appellee testified that the situation that existed between her and her husband adversely affected her mental outlook and physical health. Appellee's testimony was corroborated by another witness. Appellant testified that it was the appellee who had refused to have sexual intercourse with him and that he at no time refused to have sexual intercourse with her.

The court granted a "Brown Decree" dissolving the marriage on the grounds that the parties had not cohabited together as husband and wife for a period of more than "five" years. Appellant contends that (1) the term "cohabitation" as used in the Arizona statutes means more than just sexual intercourse and (2) since the complaint alleged cruelty as a ground for divorce it was error to decree a divorce based upon failure to cohabit for a total of five years.

Although neither party has discussed it on appeal, we initially note that even though the appellant did not file a counterclaim for divorce, the court awarded a "Brown Decree." We know of no cases sanctioning the granting of a "Brown Decree" in the absence of a counterclaim. See Acheson v. Acheson, 107 Ariz. 235, 485 P.2d 560 (1971); Moore v. Moore, 101 Ariz. 40, 415 P.2d 568 (1966); Hemphill v. Hemphill, 84 Ariz. 95, 324 P.2d 225 (1958); Brown v. Brown, 38 Ariz. 459, 300 P. 1007 (1931). Implicit in a "Brown Decree" is that both parties have proven grounds for divorce with the requisite corroborating circumstances and both are asking for a divorce. As to the issue of "cohabitation", although it is true that occasional unjustified refusal of sexual intercourse is not a ground for divorce, a total unjustified withdrawal

from sexual intercourse over a period of ten years, such as has occurred in this case, constitutes cruel and inhuman treatment. See Jacobsen v. Jacobsen, 205 Misc. 584, 130 N.Y.S.2d 762, on reargument 205 Misc. 798, 130 N.Y.S.2d 762 (1954). Therefore, assuming arguendo, that the "cohabitation" envisioned by our statute contemplates more than just sexual intercourse, cruelty was established by the evidence. Although the court improperly entered a "Brown Decree" the appellee is not complaining of the form of the decree and the court very properly dissolved the marriage.

## ALIMONY

■ Appellant contends that the court erred in granting appellee the sum of $300 per month alimony since he contends that both in the complaint and in argument to the court appellee asked for only $250 per month alimony. We do not agree. The complaint shows, as did the oral argument, that appellee was asking for *not less than* $250. We have examined the facts upon which appellant contends that the award of alimony was excessive and we find that the court did not abuse its discretion in awarding appellee the sum of $300 per month as alimony.

## DISTRIBUTION·OF PROPERTY

The court found that certain property was the community property of the parties. The most valuable property consisted of life insurance policies with cash value of $8,000 and checking accounts containing $5,000. The checking accounts were in Illinois and Nevada.

■■ The rule is that property interests in movables acquired by the spouses during a marriage are determined by the law of the matrimonial domicile at the time of acquisition. ·Rau v. Rau, 6 Ariz. App. 362, 432 P.2d 910 (1967). Matrimonial domicile is where the parties are domiciled during marriage. Stephen v. Stephen, 36 Ariz. 235, 284 P. 158 (1930). Appellant, who was in the United States Air Force while in Arizona, claims that the matrimonial domicile of the parties is Illinois and under Illinois law this property would be his separate property.

The parties were married in Illinois in 1947, and lived there after the marriage. The evidence shows that in 1951, appellant was recalled into the service because of the Korean War. The record is silent as to where the parties were living at that time. The parties came to Arizona in 1964, when appellant was stationed here with the United States Air Force pursuant to his request upon return from Vietnam. In between that time they lived in Texas where appellant was stationed and in Virginia in 1959, where appellant was on temporary duty with the Air Force. While appellant was in Vietnam, appellee lived in California.

While in Tucson and stationed at Davis-Monthan Air Force Base, the parties lived off-base in a rented house. Due to marital difficulties appellant left the home in the spring of 1967, and lived elsewhere. The record is silent as to where he lived. Between 1967, and the date of the trial in 1971, appellant retired from the Air Force. At the time of the trial he testified that he was living with his sister in Illinois. There was no testimony as to when he left Arizona.

On the issue of domicile in the State of Arizona appellee testified as follows:

"Q. All right. Now, you remember your deposition was taken in the earlier case, No. 97085, on April 10th, 1967, up at Mr. Joe Soble's office?

A. I remember the depositions.

Q. Remember that incident? And I questioned you at that time, did I not?                   :

A. Yes, sir.

Q. And at that time did you not tell me that your husband's home, what he had always called home, whenever he refers to home, it means his mother's or sisters' place back·in Illinois, ·is that correct?

´·*    ´    *        *        *    ´.  *        *|  ´

THE WITNESS: Yes, I said that he called his mother's home, home, even when we were living in Waukegan.

Q. (By Mr. Green) And you admit, do you not, that your husband has never considered himself a resident of the State of Arizona other than having been sent here by the military service; do you not admit that?

* * * * * *

THE WITNESS: We have talked about retiring in Arizona over the period of years, or California.

Q. (By Mr. Green) Or California?

A. But he has stated that he would not like to live back in Illinois because it is too cold.

Q. Are you saying—

A. This is over the years.

Q. Over the years?

A. Yes, in our travels and everything.

Q. Is that before you came to Arizona?

A. Yes. We planned on this. This is why we wanted to stay in Phoenix.

Q. When he was in Arizona you stated he considered Illinois his home, correct?

A. This is what he referred to, but he—

Q. And he actually had an Illinois driver's license while you were together?

A. I don't know where his driver's license was from.

Q. Now, he didn't come to Arizona of his own free will, he was sent here, wasn't he?

A. He requested it. It was his first choice from Vietnam.

Q. Assignment here from Vietnam?

A. Yes, sir.

Q. Did he put in to go to shcool [sic] here?

A. I don't know."

* * * * * *

The only other evidence concerning domicile in Arizona was the rental of a house off-base. On the issue of domicile the appellant testified:

"Q. Have you ever been a resident of the State of Arizona?

A. Never.

Q. Considered this your residence?

A. No, never have.

Q. Did you come here solely in accordance with you duties with—

A. That's right.

Q. —the U. S. Air Force?

A. I was transferred here.

Q. What has been your residency prior to all of the time—

A. Illinois.

Q. That's what basically has been your home?

A. That's right. I have had a voter's registration card all the time there.

Q. And you have never considered Arizona your home at all?

A. Never have.

Q. Now, never voted in Arizona?

A. No.

Q. Always voted in Illinios, or by absentee ballot or something?

A. When I voted, yes.

Q. And that's where you plan to live now that you are out of the service?

A. Yes. Well, where I can find a job."

* * * * * *

In discussing domicile there are certain rebuttable presumptions which must be taken into consideration. Domicile is presumed to follow residence, and, as actual residence is merely one circumstance, the presumption raised thereby is not conclusive, but is rebuttable and the burden of proof to rebut this presumption is on the person contending to the contrary. Hines v. Hines, 220 Tenn. 437, 418 S.W.2d 253, 255 (1965); 28 C.J.S. Domicile § 16 (1941). A domicile, once estab-

**274**

lished, is presumed to continue until a change is shown. Griffin v. Griffin, 122 Cal.App.2d 92, 264 P.2d 167 (1953); 28 C.J.S. Domicile § 16 (1941). The burden of proof is on the one asserting that an earlier domicile was abandoned in favor of a later one. Valley Nat'l Bank v. Siebrand, 74 Ariz. 54, 243 P.2d 771 (1952).

The ability of a serviceman to gain domiciliary status in this state was decided in Clark v. Clark, 71 Ariz. 194, 225 P.2d 486 (1950), wherein the court held that a person present in the State of Arizona while in the military service can become a domiciliary if he has the necessary intention to make a home in Arizona and performs some act to carry out such intention. In Clark v. Clark, supra, the plaintiff was a serviceman stationed at Williams Air Force Base, Arizona. When he was off-base, he resided with his foster mother in Tempe, Arizona. The court held that his intent was outwardly manifested by his residence with his foster mother at Tempe, Arizona, when he was off-base and that ". . . his residence was sufficiently corroborated by other witnesses." We believe that the effect of Clark v. Clark, supra, as to persons in the military service in Arizona, is to make residence a neutral factor in determining domicile, creating no presumption, and leaving the court to ascertain domicile from his intent as manifested by his acts.

Our reading of various decisions on the question of domicile leads us to the conclusion that precedent is of little value, each case having to be decided on the basis of its own peculiar facts, using as indicia the habits of the person, his business and domestic relations, declarations, exercise of political rights, community activities, payment of taxes, ownership of property and other pertinent objective facts ordinarily arising out of the existence of the requisite intent.

The test, which we as an appellate court apply, is: Was there sufficient evidence to support the trial court's conclusion? We do not believe there was. The

parties were domiciled in Illinois prior to appellant being recalled to active duty. The burden was on appellee to show by a preponderance of the evidence that there has been a change of domicile. Valley Nat'l Bank v. Siebrand, supra.

Under the law of Illinois neither the insurance policies nor the checking accounts are subject to any claim of the appellee. Ill.Rev.Stat., ch. 40, § 18 (Smith-Hurd 1956); Insoda v. Insoda, 400 Ill. 596, 81 N.E.2d 473 (1948).

Since appellee did not show any equitable interest in the property, judgment of the court that the insurance policies and the checking accounts are community property and that appellee be awarded $6,000 is reversed and the trial court is ordered to enter a modified decree adjudging said policies and checking account to be the sole and separate property of the appellant. The decree is affirmed in all other respects.

KRUCKER, C. J., and HATHAWAY, J., concur.