# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 02-6073 EM

_____

| | | |
|---|---|---|
| In re: Popkin & Stern | * | |
| | * | |
| Debtor | * | |
| | * | |
| Nancy Fendell Lurie, | * | Appeal from the United States |
| Michael Lurie, and | * | Bankruptcy Court for the |
| Ryan Lurie, | * | Eastern District of Missouri |
| | * | |
| Appellants, | * | |
| | * | |
| v. | * | |
| | * | |
| Robert J. Blackwell, | * | |
| Liquidating Trustee of the | * | |
| Popkin & Stern Liquidating Trust, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: April 23, 2003
Filed: May 20, 2003

_____

Before, KRESSEL, Chief Judge, DREHER, and FEDERMAN, Bankruptcy Judges.

_____

FEDERMAN, Bankruptcy Judge.

_____

On November 1, 2002, the bankruptcy court held that Nancy and Ronald Lurie jointly owned 87.4 percent of a painting entitled "Apache Renegades," and that 87.4 percent of the proceeds of the sale of that painting should be evenly divided between Nancy Lurie and the Liquidating Trustee of the Popkin & Stern Liquidating Trust.[1] On November 14, 2002, the bankruptcy court denied appellants' motion to set aside and reconsider the order of November 1, 2002. Appellants now appeal from both of those orders. We affirm.

FACTUAL BACKGROUND

This case has a long and complex history beginning with the bankruptcy filing of the Popkin and Stern law firm. Ronald Lurie (Ronald) was a general and managing partner of Popkin & Stern at that time. In October of 1994, Robert Blackwell, the Liquidating Trustee (the Trustee) of the Popkin & Stern bankruptcy estate, obtained a deficiency judgment against Ronald in the amount of $1,121,743, plus interest from the date of judgment at the rate of 6.06 percent. This deficiency judgment was based on the difference between the value of the property of Popkin & Stern's estate and the amount needed to pay all of the allowed claims against Popkin & Stern.[2] On June 17, 1994, Ronald pleaded guilty to felony perjury in connection with the bankruptcy case, and he was incarcerated.

On February 25, 1995, the bankruptcy court entered an order freezing the Luries' assets, including the painting entitled "Apache Renegades."[3] The Luries

---

[1]The Honorable Barry S. Schermer, United States Bankruptcy Judge for the Eastern District of Missouri.

[2]The Bankruptcy Code permits a trustee to make a claim against a general partner of a bankrupt partnership if "there is a deficiency of property of the [partnership's] estate to pay in full all claims which are allowed." 11 U.S.C. § 723(a).

[3]Order dated February 22, 1995, Appellee's Appendix at p. 18-19.

purchased this painting in Missouri in 1981. The painting's Certificate of Title, dated January 26, 1981, indicates that the Nancy Fendell Lurie Trust owned a two-thirds interest in the painting and that the Peter Lurie Revocable Trust owned a one-third interest. Peter Lurie was the father of Ronald and Robert Lurie, the two beneficiaries of the Peter Lurie Trust. Nancy Lurie (Nancy) was the sole beneficiary of the Nancy Fendell Lurie Trust, which was subsequently liquidated. Those assets were distributed to Nancy.

In addition to the deficiency judgment against Ronald, in April of 1998, the Trustee obtained a judgment against Nancy to set aside certain transfers of assets, as well as an aggregate monetary judgment in the amount of $352,300.95, plus interest. That judgment permitted the Trustee to execute on Ronald and Nancy's jointly-held assets to the extent of the judgment against her.

On September 10, 1998, the Trustee filed a motion for relief from the bankruptcy court's order freezing all of the Luries' assets. On November 18, 1998, the bankruptcy court granted the Trustee's motion, and he proceeded to execute against personal property held by the Luries in Montana.

On December 21, 1999, the bankruptcy court entered an order holding that the total amount the Trustee could collect on his judgments against Ronald and Nancy was the amount of the deficiency judgment against Ronald, plus interest. Thus, the Trustee could only execute on Nancy's property up to the amount of his judgment against her-- $352,300.95, plus interest-- and any amount realized from Nancy's judgment must be credited against Ronald's deficiency judgment.

Sometime prior to January 13, 2000, the Luries consigned the painting "Apache Renegades" to a gallery in Arizona. On January 13, 2000, the Trustee and the sheriff of Maricopa County, Arizona, conducted an execution sale of "Apache Renegades." After deducting fees and costs, the Trustee received $203,059.00 from the sale of the

3

painting. The funds from the sale of the painting were deposited into the Popkin & Stern liquidating trust account. Prior to the sale, the parties agreed that Robert Lurie, Ronald's brother, would receive 12.6 percent of the proceeds. The bankruptcy court entered an order allowing the Trustee to issue a check in accordance with this agreement, and the Trustee paid to Robert the sum of $25,585.00. This Court has already recognized the distribution to Robert Lurie.[4] Thus, the only dispute here concerns the ownership and distribution of the remaining $177,474, plus interest.

On June 27, 2000, Nancy filed a motion in the bankruptcy court to determine the ownership of the proceeds of the painting. The bankruptcy court denied Nancy's motion, concluding that the *Rooker-Feldman* doctrine barred it from hearing the issue. Nancy appealed, and we reversed the bankruptcy court and remanded for further proceedings.[5] The Trustee appealed, but the Eighth Circuit Court of Appeals dismissed that appeal.[6] The Eighth Circuit stated that, "at a minimum, the BAP's remand order requires the bankruptcy court to make a *de novo* determination of Nancy Lurie's ownership interest, if any, in the painting and its proceeds."[7]

On July 18, 2002, on remand, the bankruptcy court dismissed as moot Nancy's motion to determine her ownership interest. The bankruptcy court found that the parties had stipulated that the judgment against Nancy had been satisfied, and that Nancy had not requested the court to distribute the proceeds to her. The court, therefore, found that the relief requested was moot in light of the satisfaction of the judgment.

---

[4]*Blackwell v. Lurie (In re Popkin & Stern)*, 259 B.R. 701, 704-05 (B.A.P. 8th Cir. 2001).

[5]*Id.*

[6]*Blackwell v. Lurie (In re Popkin & Stern)*, 289 F.3d 554 (8th Cir. 2002).

[7]*Id.* at 556.

4

On August 14, 2002, Nancy and her two sons, Michael and Ryan, filed a new motion requesting a determination of the ownership interests in the proceeds of the sale of the painting and seeking a distribution of those funds. Nancy claimed that she has fully satisfied the judgment against her, that the Trustee no longer has a claim against her, that she owned 80 percent of the painting, and that she, therefore, is entitled to receive 80 percent of the proceeds from the sale of the painting, plus interest. Michael and Ryan also asserted in this motion that they owned 7.4 percent of the painting, and that they are entitled to the remaining 7.4 percent of the proceeds, plus interest.

On November 1, 2002, the bankruptcy court entered an order in which it determined that Nancy and Ronald jointly owned 87.4 percent of the painting at the time of the execution sale, therefore, Nancy was entitled to 43.7 percent of the net proceeds, plus interest at the legal rate for judgments. The court found that Michael and Ryan had no ownership interest in the painting. Nancy, Michael, and Ryan moved the bankruptcy court to set aside or reconsider its order. The court declined to do so, and the three of them filed this appeal. Appellants claim the bankruptcy court erred when it found Nancy and Ronald jointly owned the painting. Alternatively, appellants claim that even if Nancy and Ronald jointly owned the painting, they owned it as tenants by the entirety, thus the proceeds are exempt from the claims of the Trustee.

## STANDARD OF REVIEW

A bankruptcy appellate panel shall not set aside findings of fact unless those findings are not supported by the evidence or unless they are based on an incorrect understanding of the law. We give due regard to the opportunity of the bankruptcy

court to judge the credibility of the witnesses.[8] We review the legal conclusions of the bankruptcy court *de novo.*[9] Here we review for clear error.

## DISCUSSION

There is no dispute that Robert Lurie's share of the proceeds is 12.6 percent. We, therefore, begin with the issue of who is entitled to the remaining 87.4 percent of the proceeds. The bankruptcy court analyzed conflicting facts in reaching its decision. It began with the Certificate of Title

## 1. The Certificate of Title

The Certificate of Title states:

THIS CERTIFIES THAT

Two-thirds undivided interest–Nancy Fendell Lurie Trust U/W Charles Fendell
One-third undivided interest–Peter Lurie Revocable Trust

HAS DULY PURCHASED FROM
. . .

THE WORK OF ART

TITLED "Apache Renegades", Artist Frank Tenney Johnson[10]

---

[8]*Gourley v. Usery (In re Usery),* 123 F.3d 1089, 1093 (8th Cir. 1997); *O'Neal v. Southwest Mo. Bank (In re Broadview Lumber Co., Inc.)*, 118 F.3d 1246, 1250 (8th Cir. 1997) (citing *First Nat'l Bank of Olathe, Kansas v. Pontow*, 111 F.3d 604, 609 (8th Cir.1997)). Fed. R. Bankr. P. 8013.

[9]*First Nat'l Bank of Olathe, Kansas v. Pontow (In re Pontow),* 111 F.3d 604, 609 (8th Cir. 1997); *Sholdan v. Dietz (In re Sholdan),* 108 F.3d 886, 888 (8th Cir. 1997).

[10]Appellant's Appendix, p. 157.

The Certificate of Title also indicates that the "Apache Renegades" painting was exchanged for another painting entitled "Indian Hunter," plus $100,000.[11] The evidence supports a finding that the Nancy Fendell Lurie Trust traded "Indian Hunter," plus and additional $69,000 in cash, and the Peter Lurie Family Trust contributed the sum of $31,000 toward the purchase of "Apache Renegades." Though there was some dispute about this purchase, the bankruptcy court found that the Nancy Fendell Lurie Trust owned "Indian Hunter," which was valued at $55,000. Nancy's trust traded that painting, plus an additional $50,000 cash, and the Peter Lurie Trust contributed $50,000 cash toward the purchase of "Apache Renegades." At the time of purchase, the Nancey Fendell Lurie Trust held a two-thirds interest in the painting and the Peter Lurie Trust held a one-third interest in the painting.

## 2. Dissolution of the Nancy Fendell Lurie Trust

The Nancy Fendell Lurie Trust was later dissolved, and its assets were distributed to Nancy. As a result, Nancy asserted to the bankruptcy court that, as part of that distribution, a two-thirds interest in the painting became her property. The bankruptcy court, however, found that Nancy has testified on more than one occasion that she has always considered the art she purchased with her money during the marriage, including both "Indian Hunter" and "Apache Renegades," to be joint property. She testified that there was no "mine and his" in their marriage and that everything was "ours,"[12] including the paintings. Ronald testified in the same manner

---

[11]*Id.*

[12]Appellee's Appendix, p. 387-89 ("I never felt like I was giving him this money. It was just – he would say this would cost so much, I would get the money, and it was our – it was ours. It was never his or mine. It was just ours. Maybe no one in the courtroom understands that, but we were married and it was ours. That's just the way my mind went.")

on at least one occasion.[13] Despite the fact that Nancy changed her testimony regarding the ownership of the painting at the last hearing, the bankruptcy court found her earlier testimony more credible. In addition, the bankruptcy court found that the accounting records for the Nancy Fendell Lurie Trust do not show any expenditures for these pieces of art in the first place, therefore, the funds for these purchases could have come from marital funds. We conclude that the evidence and testimony support the bankruptcy court's findings that the Luries considered Nancy's share of "Apache Renegades" to be jointly owned by them. Thus, the evidence supports the findings that Nancy and Ronald jointly owned whatever percentage that Nancy now claims as her individual property.

### 3. The Peter Lurie Revocable Trust

At the time the painting was purchased, the Peter Lurie Revocable Trust had already been dissolved and had been replaced by a spousal trust and a family trust. Though the Certificate of Title for "Apache Renegades" indicates a one-third ownership by the Peter Lurie Revocable Trust, it should have indicated a one-third ownership by the Peter Lurie Family Trust. The bankruptcy court found no dispute as to this fact. Thus, it found that Ronald and Robert each held a one-half interest in the Peter Lurie Family Trust's one-third share, because they were the only two beneficiaries to that trust.

The bankruptcy court found that the evidence supported its findings that, originally, when the painting was purchased, Nancy and Ronald jointly owned two-thirds of the painting and the Peter Lurie Family Trust (of which Ronald and Robert were equal beneficiaries) owned one-third.

---

[13]Appellant's Appendix, p. 130-31 ("I have contended all along that various purchases during our marriage in St. Louis, although they were used with my wife's funds were purchased for – jointly and they were really – it's, you know, jointly owned by myself and my wife.")

## 4. The June 28, 1988, Letter Written by Ronald Lurie

On June 28, 1988, Ronald wrote a letter in response to some concern expressed by Robert Lurie regarding Ronald's management of the Peter Lurie Family Trust. The bankruptcy court found that Robert Lurie and Ronald each held a 50 percent interest in that trust.  Ronald had, however, been drawing on the trust account funds to pay for Michael and Ryan's private school.  Although Ronald testified he considered these draws to be against his own one-half share of the trust funds, there is no written record of the withdrawals.  Moreover, the bankruptcy court found that at some point between 1981 and 1988 there had been an unwritten change of the ownership percentages of the "Apache Renegades" painting.  Robert requested some documentation of these transactions and some clarification of who owned what in the trust. The June 28, 1988, letter stated:

> This letter will confirm our discussion regarding the painting "Apache Renegade" by Frank Tenney Johnson.  The original cost of this painting was $155,000 for which the Peter Lurie Revocable Trust paid $31,000, or 20% of the original purchase price.  Of the $31,000, your portion amounted to approximately $19,500 and the portion allocated to Ryan and Mike amounted to $11,500.  Accordingly, you contributed about 63% of the amount contributed by the Peter Lurie Revocable Trust and as the trust owns a 20% interest in the painting, your interest amounts to 12.6% (63% x 20%).[14]

Since these ownership percentages differ from the percentages provided by the Certificate of Title, the bankruptcy court relied on the testimony of the parties. Ronald testified that Robert Lurie complained that, since the painting was displayed at Ronald and Nancy's house, and since they were getting all the enjoyment out of it, they should contribute more toward the ownership.[15] As a result, Ronald testified that,

---

[14]Appellant's Appendix, p. 158.

[15]Ronald Lurie's testimony, Appellant's Appendix, p. 122.

at some point between 1981 and 1988, Nancy paid approximately $20,000 into the Peter Lurie Family Trust in order to increase her share of the painting to 80 percent.[16] In addition, Ronald testified that he and Robert readjusted their relative shares within the Peter Lurie Family Trust to reflect Ronald's withdrawals for his sons' education. As a result, he stated that, of the 20 percent of the painting owned by the Peter Lurie Family Trust, by June 28, 1988, Robert's share was 12.6 percent and Ronald's share was 7.4 percent.[17] No one disputed these findings, and we conclude the bankruptcy court did not err when it found that Robert Lurie's ownership interest in the painting was 12.6 percent, and that Nancy Lurie increased her ownership interest to 80 percent.

Ronald later testified that he had given his 7.4 percent share to his sons, Michael and Ryan.[18] There was, however, no documentary evidence of this transfer, and the bankruptcy court found such a transfer never took place. With no documentary evidence of the transfer, we conclude the bankruptcy court did not err in holding that Michael and Ryan did not have an ownership interest in "Apache Renegades."

## 5. Joint Ownership

The bankruptcy court relied on other documents, admitted as part of the record, in which the Luries represented that they owned Nancy's share of the painting as joint property. We conclude that these documents support the bankruptcy court's findings that Nancy's share of the painting was "jointly owned" by Ronald and Nancy.

---

[16]*Id*. at 122-23.

[17]*Id.* at 124, 128.

[18]*Id.* at 29.

In the Joint Motion for Order freezing the sale of assets, which was filed in February of 1995, Nancy alleged that "she and [Ronald] Lurie jointly owned four (4) pieces of art."[19] Specifically, she stated they owned "an oil painting by Frank Tenney Johnson, 'Apache Renegades' owned by Lurie, the Defendant [Nancy] and Robert Lurie listed for sale for $185,000.00 presently held at Trailside Americana, 7330 Scottsdale Mall, Scottsdale, AZ 85251."[20]

The record also contains a financial statement, which was signed and notarized in September of 1995 by Nancy and Ronald, that indicates that they owned 87.5 percent of the painting and Robert Lurie owned 12.5 percent.[21]

In a 1995 Global Settlement Agreement, signed by Nancy, Ronald, Michael, and Ryan, they state that Nancy and Ronald Lurie owned the painting.[22]

In his bankruptcy schedules filed in 1994, Ron Lurie stated that he, Nancy, and Robert owned the painting.[23]

The bankruptcy court made all of the above factual findings and determined that Ronald and Nancy "jointly" owned 87.4 percent of "Apache Renegades."[24] That finding was not clearly erroneous.

---

[19]Appellee's Appendix, p. 14.

[20]*Id.*

[21]*Id*. at 220, 224.

[22]*Id.* at 275-298.

[23]*Id*. at 309.

[24]Appellant's Appendix, p. 9-10.

11

### 6. Tenants by the entirety verses Joint Tenancy

Nancy, Michael, and Ryan alternatively assert that, even if Nancy and Ronald own an 87.4 percent interest in "Apache Renegade," they own it as tenants by the entirety, thus, the funds are exempt from the claims of their individual creditors.

The bankruptcy court found that the Luries purchased "Apache Renegades" in Missouri, where they lived at the time. The bankruptcy court also found that the Luries moved to Montana in 1994, and continue to reside there. Ronald Lurie testified at his deposition on September 16, 1994, that "Apache Renegades" was then hanging in his home in Bozeman, Montana.[25] By the time the Trustee began proceedings to execute on the painting, the Luries had consigned the painting to a gallery in Arizona. The Trustee, therefore, sold a painting located in Arizona, owned by residents of Montana, originally purchased in Missouri. Thus, the issue before the bankruptcy court was whether the Luries held the painting as tenants by the entirety, community property, or joint tenancy. The bankruptcy court resolved this issue by holding first that the Luries owned the painting jointly, and that the Luries resided in Montana, therefore, Montana's law controls the form of ownership. Missouri recognizes tenants by the entirety, but Montana does not. Arizona is a community property state.

Tenancy by the entirety is a form of ownership in property created by marriage in which each spouse owns the entire property rather than a share or divisible part.[26] In other words, the husband and wife have unity of interest, unity of entirety, unity of time, and unity of possession, and both are seized of the entirety.[27] Moreover, in

---

[25]Appellant's Appendix, p. 80; Appellee's Appendix, p. 379 (Deposition of Ronald Lurie taken on September 16, 1994, p. 71).

[26]*Rinehart v. Anderson*, 985 S.W.2d 363, 367 (Mo. Ct. App. 1998).

[27]*Murawski v. Murawski*, 209 S.W.2d 262, 264 (Mo. Ct. App. 1948).

Missouri there is a presumption that both personal property and real estate, owned by a husband and wife, are held as tenants by the entirety.[28] This form of title derives from ancient common law, and serves the purpose of making it difficult, if not impossible, for a creditor of one spouse to reach that spouse's interest in property held by both spouses as tenants by the entirety.[29] Tenancy by the entirety is distinguishable from joint tenancy by one singular characteristic. The tenancy cannot be destroyed involuntarily by an individual creditor.[30] And one spouse cannot destroy the entirety without the express consent of the other spouse.[31]

The Trustee argues, however, that under the facts of this case, Nancy and Ronald never held the painting as tenants by the entirety. Four elements are necessary in creating a tenancy by the entirety: (1) the husband and wife take one and the same interest; (2) the husband and wife take the interest by the same conveyance; (3) the interests commence at the same time; and (4) the husband and wife hold by one and the same undivided possession.[32] The Trustee asserts these elements are not present here. We agree. The Certificate of Title is the best evidence of the parties intent at the time of purchase. At that time, the Nancy Fendell Lurie Trust and the Peter Lurie Family Trust jointly purchased the painting. At the time of purchase, therefore, Nancy and Ronald did not take one and the same interest, by the same conveyance. Thus, despite a presumption in Missouri that personal property is held as tenants by the entirety, when the facts of the acquisition rebut the presumption, the parties must

---

[28]*See, e.g. Scott v. Flynn*, 946 S.W.2d 248, 250 (Mo. Ct. App. 1997).

[29]*Harris v. Crowder*, 174 W. Va. 83, 322 S.E.2d 854, 858 (W. Va. 1984).

[30]*Id.* at 858.

[31]*Sutorius v. Mayor*, 170 S.W.2d 387, 392 (Mo. 1943).

[32]*Green Hills Production Credit Assoc. v. Blessing*, 844 S.W.2d 5, 7 (Mo. Ct. App. 1992).

offer some evidence that they altered the form of ownership.[33] In *Green Hills Production Credit Association v. Blessing*, Mr. Blessing received a discharge in bankruptcy of a joint debt. The plaintiff then tried to garnish Ms. Blessing's interest in life insurance proceeds payable upon the death of her son. The designation of beneficiary stated that Mr. and Mrs. Blessing were to share equally in the proceeds. Ms. Blessing argued that she and Mr. Blessing held the proceeds as tenants by the entirety. The court disagreed. It found that Ms. Blessing failed to show that she and Mr. Blessing took one and the same interest and that they held by one and the same undivided interest.[34] As in *Blessing*, the bankruptcy court relied on the testimony of both Nancy and Ronald that they jointly owned the painting. It did not, therefore, err in finding that they held the painting as joint tenants.

Alternatively, the Trustee asserts that even if the painting had been held as tenants by the entirety at one time, the tenancy was severed when they moved to Montana.[35] The bankruptcy court found that the Montana Supreme Court has already decided this issue with regard to other personal property owned by the Luries, and seized by the sheriff of Gallatin County, Montana. The Trustee executed on other personal property held by the Luries to satisfy his judgment against Ronald Lurie.[36] In *Lurie v. Sheriff of Gallatin County,*[37] the District Court of the Eighteenth Judicial District, In and For the County of Gallatin, Montana (the Montana State Court) held that personal property that had been owned by Nancy and Ronald as tenants by the entirety in Missouri, but which was seized in Montana from their Montana residence after they moved it and themselves to Montana, had become joint tenancy or tenancy

---

[33]*See Id.*

[34]*Id.*

[35] Appellee's Brief, p. 26-27 (citations omitted).

[36] Brief of Appellee, p. 16-17.

[37]299 Mont. 283, 999 P.2d 342 (Mont. 2000).

in common property. Nancy appealed the Montana State Court decision to the Montana Supreme Court. The Montana Supreme Court affirmed, holding that "personal property owned by Appellant and her husband Ronald as tenancy by the entirety in Missouri may not be held in that manner in Montana. The property is now owned either as joint tenancy property or as tenancy in common property."[38] The Montana State Court had found that the law governing personal property is determined by the situs of the property and the domicile of the owner.[39] Since the Luries resided in Montana, and their personal property was located in Montana, the Montana State Court found that Montana's law applied.[40] Moreover, the Montana State Court held that tenancy by the entirety is not "a permissible mode of ownership of property in Montana," therefore, it found that, as a matter of law, the Luries' personal property is owned as joint tenancy or as tenancy in common.[41] The Montana Supreme Court affirmed the Montana State Court as to all of its holdings.

Nancy argues, however, that the bankruptcy court erred in finding that they held "Apache Renegade" as joint tenants or tenants in common. She claims the painting was located in Missouri when they consigned it to the gallery in Arizona, therefore, they held the painting as tenants by the entirety. While the Luries now contend that the painting was never located in Montana, the bankruptcy court had evidence before it to find otherwise. Ronald Lurie testified at his deposition on September 16, 1994, that the painting was hanging in his home in Montana.[42] We find no error in the bankruptcy court's reliance on that testimony. Moreover, the

[38]299 Mont. at 288, 999 P.2d at 346.

[39]299 Mont. at 286, 999 P.2d at 343.

[40]*Id.*

[41]*Id.* (citing *Clark v. Clark*, 143 Mont. 183, 387 P.2d 907 (1963)).

[42]Appellee's Appendix, p. 379 (Deposition of Ronald Lurie taken on September 16, 1994, p. 71).

bankruptcy court found that the Luries jointly owned the painting at the time of the execution sale,[43] and that finding is not clearly erroneous. It is undisputed, however, that the Trustee registered his judgment against Ronald in Arizona, and the sheriff in Arizona seized the painting and had it sold in execution of a domesticated judgment.

The relevant Montana statute, relied upon by the Montana Supreme Court, provides that "[i]f there is no law to the contrary in the place where the personal property is situated, it is deemed to follow the person of its owner and is governed by the law of the domicile."[44] Since the painting was situated in Arizona when it was seized and sold, we must look to Arizona law, if it is contrary to Montana law. Arizona, which is a community property state,[45] does not have a statute addressing the choice of law as to personal property. Nancy, Michael, and Ryan, however, rely upon case law that holds that property rights in personal property in Arizona are governed by the law of their matrimonial domicile at the time of its acquisition.[46] "Matrimonial domicile is where the parties are domiciled during marriage."[47]

Each of the cases cited by Nancy involve a situation where one or both parties to the dispute resided in Arizona. The Trustee distinguished *Jizmejian* on that basis. In that case the husband was in the military and had always claimed Illinois as his state of residence. While stationed in Arizona, however, he and his wife began dissolution proceedings. Ms. Jizmejian claimed that an insurance policy and checking account, which was owned by Mr. Jizmejian, and located in Illinois, was

---

[43]Appellant's Appendix, p. 5.

[44] *Id*. at 345; Mont. Code. Ann. § 70-1-109 (Supp. 2002).

[45] *Nationwide Resources Corp. v. Massabni*, 143 Ariz. 460, 464, 694 P.2d 290, 293 (Ariz. Ct. App. 1984).

[46]*Id.* (citing *Jizmejian v. Jizmejian*, 16 Ariz. App. 270, 492 P.2d 1208, 1210 (Ariz. Ct. App. 1972). *See also Rau v. Rau*, 432 P.2d 910 (1967).

[47]*Massabni*, 143 Ariz. at 464, 694 P.2d at 293.

community property. The Arizona Court of Appeals disagreed. It found that Ms. Jizmejian failed to sustain her burden to show that the parties either had changed, or intended to change, their domicile to Arizona.[48] The court, therefore, looked to Illinois law to determine the allocation of the property because Mr. Jizmejian was domiciled in Illinois and the property was located in Illinois. Thus, the Trustee argues that the law in Arizona is that the law of the domiciliary state controls. We agree. Only the fact that the painting was consigned to a gallery in Arizona, and, thus, sold there implicates Arizona law. That factor, without more, cannot implicate Arizona law when the parties reside in another state.[49] Moreover, Nancy never raised this issue as an objection to the execution sale. As the court found in *National Union Fire Ins. Co. v. Greene,*[50] if a party has an opportunity to raise a defense against enforcing a judgment against an interest in community property, and she fails to do so, she cannot later claim her due process rights have been violated.[51]

We, therefore, find no error in the bankruptcy court's findings that Nancy and Ronald held the painting jointly, that their domicile was in Montana, that the painting was not community property, and that the proceeds should be divided between Nancy and the Trustee.

Since these findings are not clearly erroneous, we affirm.

---

[48]16 Ariz. App. at 273, 492 P.2d at 1211.

[49]*See District of Columbia v. Powers Gallery, Inc.*, 335 A.2d 244, 247 (D.C. Cir. 1975) (holding that consigned art objects cannot be considered stock-in-trade unless owned by the gallery, therefore, the residence of the owner is the criterion upon which personal property tax is assessed, not location).

[50]195 Ariz. 105, 985 P.2d 590 (Ariz. Ct. App. 1999).

[51]195 Ariz. at 111, 985 P.2d at 596.

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE PANEL,
EIGHTH CIRCUIT