NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

CHRISTOPHER ANTHONY, *Petitioner/Appellee*,

*v.*

OPHELIA RAE ANTHONY, *Respondent/Appellant*.

No. 1 CA-CV 17-0384 FC
FILED 6-12-2018

Appeal from the Superior Court in Apache County
No. S0100DO201400118
The Honorable Kay H. Wilkins, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Hamblin Law Office, PLC, Eagar
By Bryce M. Hamblin
*Counsel for Petitioner/Appellee*

Gary L. Thomas Attorney at Law, Phoenix
By Gary L. Thomas
*Counsel for Respondent/Appellant*

---

**MEMORANDUM DECISION**

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge James B. Morse Jr. and Judge Kent E. Cattani joined.

---

**W I N T H R O P**, Judge:

¶1        Ophelia Rae Anthony ("Mother") appeals the superior court's decree of dissolution of marriage and order awarding Christopher Anthony ("Father") child custody.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        Mother, a member of the Navajo Nation, is the biological parent, and Father, a member of the Choctaw Nation, is the adoptive parent of the child, an enrolled member of the Navajo Nation.  During their marriage, Mother and Father lived in Arizona, New Mexico, and Texas. From 2013 to the beginning of 2014, Mother, Father, and child lived on the Navajo reservation, but in January 2014 they moved to Texas.  Mother and Father separated soon thereafter and in April 2014, Mother and child returned to Arizona, briefly staying in Show Low.  Mother and child then spent the summer of 2014 in Sanders, Arizona.

¶3        In September 2014, Father filed a petition for dissolution of marriage with child in the Apache County Superior Court.  In the petition, Father listed his address as Irving, Texas, and listed Mother's address as Sanders, Arizona.  Mother was personally served in November 2014 but did not respond to the petition.  In February 2015, Father moved for entry of default.  The court set a default hearing for March 2015, and mailed Mother a hearing notice, which was returned to the court.  Although Mother's hearing notice was returned to the court, Mother appeared at the default hearing and entered an agreement for the division of property with Father.

¶4        After the default hearing, the superior court *sua sponte* requested the parties to submit memoranda on the issue of whether the court had jurisdiction to enter a child custody order.  The court reviewed the parties' memoranda and ultimately determined that it had jurisdiction. At a subsequent hearing, the court accepted Mother's and Father's agreement regarding the division of property and set a hearing to resolve the issue of child custody in July 2015.

**¶5** At the child custody hearing in July 2015, the court asked about the child's location and Mother responded that he was "at our home in Sanders." Mother then testified that she has two homes—one in Sanders, Arizona, and one in Tohatchi, New Mexico,—and that the child lived in Tohatchi, New Mexico, with his maternal grandmother during the school year. Mother further testified that in April 2014, when she returned to Arizona from Texas, she went "home" to live and has remained there ever since.

**¶6** Father testified that although he tried to see the child, Mother prevented his attempts to visit him, and Father has not seen the child since April 2014, when Mother and child lived with him in Irving, Texas. Father further testified that although he did not know where Mother lived, he believed the child lived with his maternal grandmother in Tohatchi, New Mexico. After hearing from both parties, the court granted Father custody of the child pending the court's final order, and took the matter under advisement.

**¶7** The court ultimately granted Father legal decision-making authority over the child and ordered the child to primarily reside with Father. The court found that, contrary to Mother's assertions, the child had not been living with Mother, but with his maternal grandmother in New Mexico. The court additionally found that Mother had intentionally misled the court by exaggerating her allegations of Father's actions to obtain orders of protection and by stating that she misunderstood the place of exchange, which prohibited Father from visiting the child.

**¶8** Mother then filed a motion to stay, a motion for reconsideration, and a motion to set aside the default judgment, all of which the court denied. Mother subsequently filed an addendum to her motions and included a copy of the petition for child custody that she submitted to the Navajo Nation Family Court in August 2015.[1] The court set all pending

---

[1] Following Mother's petition for child custody, the Navajo Nation Family Court issued a temporary injunction, pending its final decree on the matter. In February 2016, the Navajo Nation Family Court entered a default judgment, awarding Mother sole legal and physical custody of the child. The court additionally found it had "home state" jurisdiction over child custody because the child had been living in Tohatchi, New Mexico, on the Navajo reservation, from August 2015 through the date of the judgment. Mother moved to register and enforce this default order with the superior court, but in October 2017, the court denied Mother's motion, finding the

matters for oral argument, and ultimately denied Mother's pending motions. Mother then filed a petition for special action with this Court, arguing the superior court lacked subject matter jurisdiction to determine child custody. This Court stayed the proceedings and mandated that the superior court make specific findings of fact and conclusions of law regarding the child's home state pursuant to Arizona Revised Statutes ("A.R.S.") sections 25-402 (2017) and 25-1031 (2017).[2]

¶9        In November 2015, the superior court held a hearing to make specific findings regarding its jurisdiction as directed by this Court. At the hearing, Father testified that Mother had previously filed for divorce in 2013, in the Apache County Superior Court, and that Mother had submitted numerous documents to the court listing her residence as Sanders, Arizona.[3] Mother, however, argued that she did not have a permanent residence, but moved between Sanders, Arizona, — where she was building a home on her family's ranch — and Tohatchi, New Mexico; both places, she argued, were on the Navajo reservation. Mother also testified that she spent the entire summer — May, June, and July — in Sanders, Arizona, with the child once she returned to Arizona after living in Texas with Father.

¶10        After hearing argument from the parties, the superior court found that Mother was not a credible witness. The court further found that neither Arizona nor the Navajo Nation were the child's home state, in part because Mother and child had not resided in either location for six consecutive months before the commencement of the child custody proceeding.[4] The court additionally found that Mother's efforts to obtain a custody order from the Navajo Nation Family Court appeared to be "a

---

Navajo Nation Family Court did not have jurisdiction to enter its order because the superior court had already decided the issue of child custody. Mother appealed the denial, however, we dismissed Mother's appeal as untimely.

[2]        We cite the current versions of all applicable statutes as no revisions material to this decision have occurred.

[3]        Additionally, Mother listed her residence as Apache County, Arizona, in the parties' 2013 adoption petition.

[4]        The court also found that the Navajo Nation was not the child's "home state" because Mother failed to present any evidence, besides her own testimony, which the court found not credible, that her Sanders home was on the reservation.

blatant attempt at forum shopping." The court then issued an order detailing its findings pursuant to A.R.S. § 25-1031. The court was unable to establish jurisdiction based on Arizona being the child's "home state," but found that it had jurisdiction pursuant to A.R.S. § 25-1031(A)(2), based on the child's/Mother's strong ties to Arizona.

¶11 The superior court issued its final order for the dissolution of marriage on April 20, 2017. Mother moved for a new trial, which the court denied. Mother timely appealed and we have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and A.R.S. § 12-2101(A)(1), (A)(5)(a) (2016).

**ANALYSIS**

¶12 Mother appeals the superior court's order of dissolution of marriage and determination of child custody, arguing the court lacked jurisdiction to resolve either of these two matters.

    *I.*     *Jurisdiction over Dissolution of Marriage*

¶13 On appeal, Mother argues that the superior court lacked subject matter jurisdiction to enter the decree of dissolution of marriage because she was not domiciled in Arizona.

¶14 We review *de novo* whether a court has subject matter jurisdiction, *Fry v. Garcia*, 213 Ariz. 70, 72, ¶ 6 (App. 2006), but we will affirm a court's finding of domicile if the finding is supported by sufficient evidence. *See Jizmejian v. Jizmejian*, 16 Ariz. App. 270, 274 (1972). To have subject matter jurisdiction over a divorce action, a court must specifically be granted jurisdiction by statute. *See Leon v. Numkena*, 142 Ariz. 307, 309 (App. 1984). Section 25-312 grants a court subject matter jurisdiction over a divorce proceeding if the court finds "[t]hat one of the parties, at the time the action was commenced, was domiciled in this state . . . and that . . . presence has been maintained for ninety days prior to filing the petition for dissolution of marriage." A.R.S. § 25-312(1) (2017). "Domicile" is established by a party's physical presence and intent to remain in a jurisdiction for "an indefinite period of time." *See DeWitt v. McFarland*, 112 Ariz. 33, 34 (1975) (quotation and citation omitted); *see also Clark v. Clark*, 124 Ariz. 235, 237 (1979) (finding a party's domicile does not change because of a brief and temporary absence from a jurisdiction).

¶15 Mother argues that the superior court lacked subject matter jurisdiction to enter the decree of dissolution because it did not find that Mother was *domiciled in Arizona*, but merely found that she "had lived in

Arizona for more than 90 days." The court, however, need not expressly state that Mother was domiciled in Arizona so long as sufficient evidence supports a finding of domicile. During the proceedings before the superior court, Mother testified that she lived on her family's ranch in Sanders, Arizona, and was building a home on that property. Mother also referred to Sanders, Arizona, multiple times as her "home." Moreover, Mother testified that she and the child lived in Sanders, Arizona, during the summer—May, June, July—before Father filed the petition for dissolution of marriage, which encompasses the 90 days before the filing of the petition. *See* A.R.S. § 25-312(1).

**¶16**    Although Mother argued that she does not have a permanent residence and goes back and forth between Arizona and New Mexico, the superior court specifically found that, throughout the proceedings, Mother had intentionally provided inconsistent testimony and found Mother's testimony not credible. The superior court, not this Court, is responsible for "weigh[ing] the evidence and determin[ing] the credibility of witnesses." *State v. Cid*, 181 Ariz. 496, 500 (App. 1995). The record, including Mother's own statements that she was building a house in Sanders, Arizona, and lived with the child in Sanders during the summer, supports the superior court's finding that Mother was domiciled in Arizona.

##### II.    Jurisdiction over Child Custody

**¶17**    Mother next argues that the superior court misconstrued A.R.S. § 25-402 and lacked jurisdiction to determine child custody.[5] We

---

[5]    In Mother's supplemental memorandum regarding her argument that the superior court did not have jurisdiction to resolve the issue of child custody, she cited *Garcia v. Gutierrez*, 217 P.3d 591 (N.M. 2009). Mother's reliance on *Garcia* is misplaced. In *Garcia*, the New Mexico Supreme Court reviewed a divorce and custody dispute between an Indian father and non-Indian mother who obtained conflicting judgments from the state and tribal court. *Id.* at 593. The court ultimately found that the state court and the tribal court had concurrent jurisdiction. *Id.* at 607. Likewise, here, in the absence of either Arizona's or the Navajo Nation's ability to exercise exclusive home state jurisdiction, both places (particularly as Father is not a member of the Navajo Nation) likely have comparable interests in the resolution of child custody and have concurrent jurisdiction over the matter.

review *de novo* whether the superior court had jurisdiction to enter a child custody ruling. *Duwyenie v. Moran*, 220 Ariz. 501, 503, ¶ 7 (App. 2009).

¶18 Section 25-402 provides that before determining issues relating to child custody, a court "must confirm its authority to do so to the exclusion of any other state, Indian tribe or foreign nation by complying with the uniform child custody jurisdiction and enforcement act, the parental kidnapping prevention act and any applicable international law concerning the wrongful abduction or removal of children." A.R.S. § 25-402(A). In this context, courts treat a child's tribe "as if it were a state of the United States." A.R.S. § 25-1004(B) (2017).

¶19 In addition to complying with A.R.S. § 25-402, a superior court also must determine the child's home state, and if Arizona is not the home state, whether the court may nevertheless exercise jurisdiction. *See* A.R.S. § 25-1031(A)(1); *see also Angel B. v. Vanessa J.*, 234 Ariz. 69, 72, ¶ 9 (App. 2014) (finding that generally the court in the child's home state is the court that has original jurisdiction over child custody (citation omitted)). A child's home state is the state where "the child lived with a parent for at least six consecutive months before the filing of a custody petition." *Angel B.*, 234 Ariz. at 72, ¶ 9 (citations omitted). Even if a court is not located in a child's home state, it may exercise jurisdiction if "[a] court of another state does not have [home state] jurisdiction" and "[t]he child and the child's parents, or the child and at least one parent . . . have a significant connection with this state other than mere physical presence" and "[s]ubstantial evidence is available in this state concerning the child's care, protection, training and personal relationships." A.R.S. § 25-1031(A)(2)(a)-(b).

¶20 Following the superior court's initial determination of jurisdiction over child custody, Mother filed a special action petition to this Court. This Court accepted jurisdiction over Mother's petition and mandated that the superior court make specific findings regarding its child custody jurisdiction pursuant to A.R.S. § 25-1031 and A.R.S. § 25-402. Accordingly, the superior court held a hearing, at which Father and Mother testified. After the testimony and oral argument, the court found that it had jurisdiction to resolve the issue of child custody. The court specifically found that neither Arizona nor the Navajo Nation had home state jurisdiction over the child because the child had moved to and lived with Mother and Father in Texas, with the intention to remain, within the six months before Father filed the petition for dissolution of marriage with child. A few months before Father filed the petition, the child left Texas with Mother, and they then split their time between Sanders, Arizona, and Tohatchi, New Mexico. The court specifically found, however, that the

child did not spend more than five consecutive months in either Arizona, New Mexico, or on the Navajo reservation.

¶21     After being unable to establish "home state" jurisdiction and after finding that no other state or nation had jurisdiction, the court proceeded to analyze whether it could exercise jurisdiction pursuant to A.R.S. § 25-1031(A)(2)(a)-(b).  The record reflects that Mother and the child had significant connections to Arizona.  During the proceedings, Mother testified that her home was in Sanders, Arizona, that she was building a home on her family's ranch in Sanders, and that she and the child lived in Sanders during the summers and on breaks from school.  Moreover, Mother and Father previously consented to the jurisdiction of Apache County by filing their petition for adoption of the child and Mother previously filed for orders of protection in Apache County.

¶22     Although the court's order did not specifically reference A.R.S. § 25-402, the court found that Mother's attempts to seek a custody order from the Navajo Nation Family Court were "a blatant attempt at forum shopping."  The court additionally found that "[p]ursuant to the court's own knowledge, there are places in the Sanders vicinity which are on the reservation and places which are not on the reservation" and that Mother had failed to provide the court with any evidence that indicated that her Sanders home was on the Navajo reservation.

¶23     Moreover, even if Mother's Sanders home was located on the Navajo reservation, that fact would not affect our analysis.  For the Navajo Nation to establish home state jurisdiction, the child would have had to live on the Navajo Nation from March 2014 onwards to establish six consecutive months of physical presence by the time Father filed his petition for dissolution of marriage in September 2014.  The record, including Mother's own testimony, demonstrates that the child was living in Texas in March and early April 2014—destroying any potential claim of home state jurisdiction by either Arizona or the Navajo Nation.  Accordingly, the superior court looked to A.R.S. § 25-1031(A)(2)(a)-(b) to establish jurisdiction, and the record supports the court's finding that Mother, Father, and the child had substantial ties with Arizona and that there was substantial evidence "concerning the child's care, protection, training and personal relationships" in Arizona.  While the Navajo Nation could have potentially established jurisdiction under this same provision, the Navajo Nation's jurisdiction would have been concurrent, not exclusive, to that of the state court.  *See Garcia*, 217 P.3d at 591.

### III.    *Costs and Attorneys' Fees on Appeal*

**¶24**    Father requests costs and reasonable attorneys' fees on appeal pursuant to A.R.S. § 25-324(B)(1)-(2) (2017), arguing Mother appealed in bad faith and that her appeal is not supported by the law or facts.  In the exercise of our discretion, we deny Father's request for attorneys' fees; however, as the successful party on appeal, we award Father his taxable costs to be determined after compliance with ARCAP 21.

## CONCLUSION

**¶25**    The superior court's order of dissolution of marriage and award of child custody in favor of Father is affirmed.



AMY M. WOOD • Clerk of the Court
FILED:  AA