NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

───────────────────

In re the Marriage of:

RAKESH NATARAJAN, *Petitioner/Appellant*,

*v.*

MEGALA NATARAJAN, *Respondent/Appellee*.

Nos. 1 CA-CV 20-0440 FC, 1 CA-CV 20-0541 FC
(Consolidated)
FILED 3-22-2022

───────────────────

Appeal from the Superior Court in Maricopa County
Nos. FC2020-050970, FC2019-055788
The Honorable Alison Bachus, Judge

**AFFIRMED**

───────────────────

COUNSEL

Rakesh Natarajan, London, England
*Petitioner/Appellant*

Megala Natarajan, Tamil Nadu, India
*Respondent/Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Peter B. Swann delivered the decision of the court, in which Judge David D. Weinzweig and Judge Paul J. McMurdie joined.

---

**S W A N N**, Judge:

¶1            Rakesh Natarajan ("Father") appeals from the superior court's dismissal of his Petition for Dissolution of Marriage. Because the court correctly determined Father is not domiciled in Arizona, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2            Megala Natarajan ("Mother") and Father are both Indian citizens who married in India on February 15, 2013. On April 19, 2013, Father moved to Arizona to join Mother, who had been working in Phoenix since 2008. Mother had been in Phoenix on a temporary L1-B work visa. Father held a dependent visa that allowed spouses of L1-B visa holders to live and work in the United States. The parties had a child in 2014.

¶3            Mother's L1-B non-immigrant visa expired on August 27, 2017. Two days earlier, the family traveled to India to attend a wedding. Before leaving Arizona, Mother and Father applied for H1-B visas and awaited their lottery results. About two weeks after leaving Arizona, Father traveled to the United Kingdom for work. He returned to India in late October 2017 to reunite with Mother and the child.

¶4            Mother's petition for an H1-B visa was approved on October 18, 2017. Father's H1-B dependent visa was approved on November 16, 2017. On November 18, 2017, the parties contacted their Arizona apartment lease agent to renew the lease on their Arizona apartment for an additional year. The parties also purchased tickets for a return flight to Arizona scheduled for December 11, 2017.

¶5            Instead of returning to Arizona, the parties separated. The child remained in India with Mother and maternal grandparents. Father left India to work remotely from his company's main office in the United Kingdom. He returned to India in May 2018, where he remained until flying to Arizona on October 1, 2018, to empty the couple's storage unit. Father then returned to the United Kingdom, where he resided through the filing of this appeal.

**¶6** On April 24, 2019, Mother allowed the child to travel to the United Kingdom to visit her father. Father then filed for a Child Arrangement Order in the United Kingdom's High Courts of Justice. In November 2019, that court ruled that India was the child's habitual residence, not the United Kingdom or the United States. The child was returned to her mother in India, where they currently reside. Father remains in the United Kingdom, though he maintains that he intends to return to Phoenix in the future.

**¶7** Father petitioned for determination of custody in the Maricopa County Superior Court. The court determined that it lacked jurisdiction to enter parenting orders while the parties were still married. Father then filed a Petition for Dissolution of Marriage in the Maricopa County Superior Court on February 14, 2020. The superior court granted Mother's motion to dismiss, finding that Father had not maintained domicile in Arizona. Father appeals.

## DISCUSSION

I. THE SUPERIOR COURT DID NOT HAVE JURISDICTION OVER FATHER'S DISSOLUTION PETITION.

**¶8** Arizona courts have jurisdiction to enter dissolution decrees when "one of the parties, at the time the action was commenced, was domiciled in this state . . . for ninety days prior to filing the petition for dissolution of marriage." A.R.S. § 25-312. Domicile requires both (1) physical presence and (2) an intent to remain for an indefinite period of time. *Lake v. Bonham*, 148 Ariz. 599, 601 (1986). Once a domicile is established, it is retained until replaced with another. *Jizmejian v. Jizmejian*, 16 Ariz. App. 270, 273–74 (1972). The superior court held that Father abandoned his Arizona domicile in favor of the United Kingdom. Father's intent to establish future domicile is a question of fact. *Bialac v. Bialac*, 95 Ariz. 86, 87 (1963). But his residence for the 90 days preceding the filing of the petition is not subject to dispute. We will uphold the superior court's decision so long as sufficient evidence supports its conclusion. *Id.* at 88. We review the evidence in the light most favorable to supporting the court's decision. *See Sommerfield v. Sommerfield*, 121 Ariz. 575, 577 (1979).

**¶9** "No general principle in the law of domicil is more firmly established than the basic rule that every person has at all times one domicil, and that no person has more than one domicil at a time." *Clark v. Clark*, 71 Ariz. 194, 197 (1950) (citation omitted). Consequentially, Father cannot be domiciled in both the United Kingdom and Arizona. Father has

lived in the United Kingdom since 2018, working at his employer's main office. "Domicile is presumed to follow residence . . . ." *Jizmejian*, 16 Ariz. App. at 273. The party contesting this presumption bears the burden of proof by a preponderance of the evidence. *Id.* at 273–74. Father claims he never abandoned his domicile in Arizona and that he intends to return to Phoenix. In support of this assertion, Father provided evidence that he and Mother renewed the lease on their Arizona apartment and bought plane tickets back to Phoenix while in India. At best, however, these actions only demonstrate the parties' intent to return to Arizona in 2017, not at the time of filing.

**¶10**        Father also claims that he has items of personal property in the state, including bank accounts and a safe deposit box. In filings with the Royal High Courts of Justice, however, Father claimed he vacated the storage unit holding the family's belongings, bringing personal items with him to London and giving the rest away to friends and charities. Father argues he was absent from Arizona because Mother "kidnapped the parties['] child" and he intended to return to Arizona once the pandemic resolved, no later than October 2020. In his 2019 filing with the Royal High Courts of Justice, however, Father stated that he "resides in the UK on a tier 2 work visa" and "intends to remain here permanently." After consideration of the facts, we determine that the superior court had sufficient evidence to find that Father abandoned his Arizona domicile.

II.    THE SUPERIOR COURT DID NOT HAVE JURISDICTION TO MAKE INITIAL CHILD CUSTODY DETERMINATIONS.

**¶11**        Father's petition for dissolution of marriage also asked the superior court to make legal decision-making, parenting time, and child support determinations concerning the parties' minor child. Our subject matter jurisdiction in child custody proceedings is governed by A.R.S. § 25-1031. Arizona courts have jurisdiction to make initial child custody determinations only if one of the following is true:

> 1. This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state.

> 2. A court of another state does not have jurisdiction under paragraph 1 or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state

4

is the more appropriate forum under § 25-1037 or 25-1038 and both of the following are true:

> (a) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence.

> (b) Substantial evidence is available in this state concerning the child's care, protection, training and personal relationships.

> 3. All courts having jurisdiction under paragraph 1 or 2 have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under § 25-1037 or 25-1038.

> 4. A court of any other state would not have jurisdiction under the criteria specified in paragraph 1, 2 or 3.

A.R.S. § 25-1031(A).

**¶12**        If a child is more than six months old, his or her home state is the "state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding, including any period during which that person is temporarily absent from that state."  A.R.S. § 25-1002(7).  Here, although the child was born in Arizona and lived here for the first three years of her life, neither she nor her parents have lived in Arizona since August 25, 2017.  Consequentially, Arizona is not the child's home state.

**¶13**        When determining child custody jurisdiction, we treat foreign nations as though they are different states within our country.  A.R.S. § 25-1005(A).  The child lived in India from late August 2017 to March 2019.  In March 2019, Mother sent the child to visit her father in the United Kingdom.  On December 2, 2019, Mother returned to India with the child.  As the child lived in India for the two and a half years immediately preceding Father's filing, apart from a temporary absence, India is the child's home state.

**¶14**        Father argues that the child's absence from Arizona is due to Mother's "wrongful removal and retention."  In *In re Marriage of Margain and Ruiz-Bours*, Margain and Ruiz–Bours married in Mexico in 2007.  239 Ariz. 369, 371, ¶ 2 (App. 2016).  They moved to California where their child was born in 2008.  *Id.*  The family traveled to Mexico in 2010.  *Id.*  The parties

disputed the cause of the trip. *Id.* Ruiz–Bours and the child lived in Mexico for nearly two years. *Id.* In 2011, Margain filed for divorce in Mexico; in 2012, Ruiz-Bours left Mexico for Arizona. *Id.* at ¶¶ 3, 6. Following proceedings in both Mexico and Arizona, Ruiz-Bours argued for the first time that California, not Mexico, was the child's home state. *Id.* at 375–77, ¶¶ 4–14, 36. She also argued that the child's ten-month absence from California was a temporary absence. *Id.* at 377–78, ¶ 36. This court found her argument unpersuasive as she cited no authority that "might lead us to conclude her ten-month absence from California was a temporary absence, especially when she did not leave Mexico until July 2012, only to abscond to Arizona." *Id.* at 378, ¶ 36. Here, Father has been absent from Arizona for nearly four years, returning only to discard the family's possessions in 2018.[1] Like Ruiz-Bours, Father cites no legal authority that would allow us to consider his extended absence from Arizona "temporary."

¶15 We also decline to find that the child was abducted from Arizona. Though the reasoning for the family's trip to India is in dispute, Father acknowledges that the parties agreed to remove the child from Arizona in August 2017. There is no evidence in the record that Indian courts have declined jurisdiction. To the contrary, Mother provided evidence that at the time of filing that the parties were involved in a child custody case in the Family Court of Tirupur, India. As the child's home state has not declined jurisdiction on the basis that Arizona is a better forum to determine custody, the superior court correctly declined jurisdiction.

**CONCLUSION**

¶16 We affirm the superior court's dismissal of Father's petition.



AMY M. WOOD • Clerk of the Court
FILED:
JT

---

[1] On October 18, 2021, Father informed the Court of Appeals that he is physically present in Arizona. Father re-entered the United States on October 16, 2021. He holds an H1-B non-resident visa set to expire on September 30, 2023. Father's current presence in Arizona does not change our conclusion that at the time of filing, he was domiciled in the United Kingdom.